# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHRISTOPHER A. JONES,

    Petitioner,

vs.

E.K. McDANIEL, *et al.*,

    Respondents.

Case No. 3:05-cv-00582-LRH-VPC

**ORDER**

This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel. This matter comes before the Court on the merits of the remaining grounds of the second amended petition.

**I. Factual Background**

The state district court summarized the facts of this case, which were adopted by the Nevada Supreme Court, as follows:

> On May 8, 1995, the Defendant physically attacked Almeta Williams in her home. In an attempt to avoid further assault, Almeta entered her youngest son's bedroom, locking the door behind her. The Defendant, however, broke into the room and continued his attack on Almeta, kicking her even when she went to the floor.
>
> Almeta's oldest son was awakened by his mother's screams. He immediately dialed "9-1-1." The Defendant left the residence and went to his car. When asked by the "9-1-1" operator for the Defendant's license plate number, Almeta went outside to try to obtain that information. The Defendant then retrieved a .40 caliber handgun and shot Almeta seven (7) times. He then fired several shots at Almeta's children, but fortunately, the bullets did not strike either of the boys.

> As a result of these actions, Defendant was charged with, among other things, open murder with [the] use of a deadly weapon. After a jury trial, he was found guilty of first degree murder with [the] use of a deadly weapon.
>
> After the jury rendered its verdict, the State agreed to waive the penalty hearing and to stipulate to a sentence of life with the possibility of parole. Under this agreement, the Defendant would be eligible for parole after serving only twenty (20) years of his prison term. Had Defendant received any other sentence allowed by statute for the commission of first degree murder with [the] use of a deadly weapon, he would either not have been eligible for parole until he had served at least forty (40) years or not have been eligible for parole at all.

(Exhibit 74, at pp. 2-3; Exhibit 91, attachment, at pp. 2-3).[1]

**II. Procedural History**

**A. State Court Proceedings (1995-2001)**

Petitioner was charged, in Nevada's Eighth Judicial District, with one count of first degree murder with the use of a deadly weapon, two counts of attempted murder with the use of a deadly weapon, and three counts of discharging a firearm at or into a structure. (Exhibit 4.)[2] At the jury trial, petitioner was found guilty of first degree murder and was found not guilty as to all other counts. (Exhibits 40-41). After the guilty verdict, petitioner entered into a stipulation with the State wherein he waived his right to a direct appeal and a separate penalty hearing; he stipulated to a sentence of life with the possibility of parole for first degree murder, and a consecutive sentence of life with the possibility of parole for the deadly weapon enhancement. (Exhibit 43). On June 25, 1996, the state trial court adjudged petitioner guilty of first degree murder with use of a deadly weapon and sentenced him according to the stipulation of the parties. (Exhibit 48). The judgment of conviction was filed on July 1, 1996. (Exhibit 49).

---

[1] The summary of background facts is intended only as an overview of the case, in order to provide context for the discussion of the issues. Any absence of mention of specific evidence in this overview does not signify that this Court has overlooked or ignored the evidence. The Court makes no credibility findings or other factual findings regarding the truth of the evidence or statements of fact in the state court.

[2] The exhibits referenced in this order are found in the record of petitioner's first federal habeas case, (*Jones I*), CV-N-01-0038-DWH-VPC, at ECF Nos. 16, 17, 18, 19, and 21. Exhibits are also found in the instant case, (*Jones II*), 3:05-cv-00582-LRH-VPC, at ECF Nos. 3, 5, and 39.

On April 22, 1997, petitioner, acting in *pro per*, filed a "motion to withdraw from stipulation and order waiving separate penalty hearing and waiving appeal" (motion to withdraw stipulation), along with an affidavit, and points and authorities. (Exhibits 56, 57, 59). On May 14, 1997, petitioner filed a *pro per* post-conviction habeas petition in the state district court, along with points and authorities. (Exhibits 68 and 69). The State filed a combined opposition to the motion to withdraw stipulation and to the post-conviction habeas petition. (Exhibit 71). On June 12, 1997, the state district court filed findings of fact, conclusions of law, and order denying the post-conviction habeas petition. (Exhibit 74). In the order, the state district court noted that the post-conviction habeas petition raised the same claims of error as petitioner raised in his motion to withdraw stipulation. (Exhibit 74, at p. 3). On the same date, the state district court entered an order denying petitioner's motion to withdraw stipulation. (Exhibit 76).

On July 9, 1997, petitioner filed a notice of appeal of the denial of his post-conviction habeas petition to the Nevada Supreme Court. (Exhibit 78). Petitioner filed an opening brief on December 15, 1997. (Exhibit 87). Nearly three years later, on September 8, 2000, petitioner sought leave to file additional pages and an amended brief adding additional grounds to the original opening brief. (Exhibits 88, 89, and 90). The Nevada Supreme Court stamped these documents "received" on September 8, 2000. (Exhibit 90). On September 11, 2000, one business day after it received petitioner's motion to amend and amended brief, the Nevada Supreme Court entered its order dismissing the appeal. (Exhibit 91). Rehearing was denied on December 29, 2000. (Exhibit 93). Remittitur issued on January 17, 2001. (Exhibit 94).

**B. Initial Federal Habeas Petition (2001-2003)**

Petitioner's federal habeas petition was filed on January 18, 2001, in case number CV-N-01-0038-DWH-VPC (*Jones I*). (ECF No. 2 in *Jones I*). The Court appointed the Federal Public Defender to represent petitioner in the federal habeas proceedings. (ECF No. 5). On February 21, 2002, through his counsel, petitioner filed a first amended petition setting forth eight grounds for relief. (ECF No. 15). Through counsel, petitioner filed a second amended petition on April 9, 2002, again seeking eight grounds of relief. (ECF No. 26). Respondents moved to dismiss the petition, asserting that Grounds 2 and 8 were not exhausted in state court. (ECF No. 33). On February 25,

2003, this Court granted respondents' motion in part, ruling that Grounds 2 and 8 were not exhausted. (ECF No. 37). On October 3, 2003, this Court dismissed this action without prejudice to allow petitioner to return to state court to exhaust Grounds 2 and 8. (ECF No. 46). The case was administratively closed without entering judgment, with a provision for petitioner to return to federal court after exhausting his claims in state court. (*Id.*).

### C. First Return to State Court (2003-2005)

Petitioner returned to the Eighth Judicial District Court of Nevada and filed his second post-conviction habeas petition on November 19, 2003, raising three grounds for relief: (1) a due process violation resulting from improper commentary, personal opinions, and disparagement of the defense in the prosecutor's closing arguments; (2) denial of effective assistance of counsel because there was no objection to the prosecutor's closing arguments; and (3) denial of effective assistance of counsel because counsel failed to file a notice of appeal on petitioner's behalf. (Exhibit 102). On June 11, 2004, the state district court entered its findings of fact, conclusions of law, and order denying the post-conviction habeas petition. (Exhibit 109). Petitioner appealed and the Nevada Supreme Court entered an order of affirmance on March 29, 2005. (Exhibits 110 and 114). Remittitur issued on May 5, 2005. (Exhibit 115).

### D. Federal Habeas Proceedings (2005-2008)

Petitioner returned to this Court with a motion to reopen his federal habeas corpus action. By order filed October 26, 2005, this Court granted petitioner's motion to re-open and assigned the action the new case number 3:05-CV-0582-LRH-VPC (*Jones II*). (ECF No. 1, in *Jones II*). On November 30, 2005, an amended petition was filed incorporating the newly exhausted grounds for relief and supplementing the record. (ECF No. 2; ECF No. 3). On February 13, 2006, respondents filed a motion to dismiss the petition, asserting that Grounds 2-6, 8, and 9 of the petition were procedurally defaulted. (ECF No. 8). By order filed July 19, 2006, this Court granted the motion, finding that Grounds 2, 3, 4, 5, 6, 8, and 9 of the amended petition were procedurally defaulted in state court, and that petitioner had not made a showing of cause to excuse the procedural default. (ECF No. 10). Grounds 2, 3, 4, 5, 6, 8, and 9 of the amended petition were dismissed with

prejudice. (*Id.*). Respondents were directed to file an answer to the remaining claims in the amended petition, Grounds 1 and 7. (*Id.*).

On October 18, 2006, respondents filed a motion to dismiss Ground 7 of the amended petition on the basis that it was unexhausted. (ECF No. 15). On August 23, 2007, this Court ruled that Ground 7 was unexhausted and gave petitioner options for dealing with his mixed petition. (ECF No. 21). Petitioner sought reconsideration of orders filed July 15, 2003, July 19, 2006, and August 23, 2007. (ECF No. 22). By order filed June 2, 2008, the Court denied petitioner's motion for reconsideration and directed petitioner to comply with the Court's order of August 23, 2007, which required petitioner to choose an option for handling unexhausted Ground 7. (ECF No. 23). Petitioner filed a motion seeking a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), so that he could return to state court to exhaust Ground 7. (ECF No. 28). On November 10, 2008, the Court granted petitioner's motion for a stay and abeyance. (ECF No. 33). The action was administratively closed while petitioner sought to exhaust Ground 7 in the state courts.

### E. Second Return to State Court (2009-2010)

Petitioner returned to the Eighth Judicial District Court of Nevada and filed his third post-conviction habeas petition on January 16, 2009. (Exhibit 116). On September 30, 2009, the state district court filed findings of fact, conclusions of law, and order denying the petition. (Exhibit 121). Petitioner appealed. (Exhibit 124). The Nevada Supreme Court filed an order affirming the denial of petitioner's third post-conviction habeas petition. (Exhibit 131). Remittitur issued on February 2, 2011. (Exhibit 132).

### F. Federal Proceedings (2011-present)

On March 22, 2011, petitioner filed a motion to reopen his federal habeas action. (ECF No. 36). By order filed May 16, 2011, this Court granted petitioner's motion and directed petitioner to file a second amended petition. (ECF No. 37). On June 15, 2011, through counsel, petitioner filed a second amended petition. (ECF No. 38). On July 15, 2011, respondents filed a motion to dismiss Ground 7 of the second amended petition as procedurally barred. (ECF No. 40). Petitioner opposed the motion (ECF No. 46) and respondents replied (ECF No. 47). Petitioner then filed a motion seeking leave to supplement his opposition, accompanied by an attached supplemental opposition.

(ECF No. 48). In the same motion, petitioner also sought reconsideration of the Court's dismissal of Ground 8 as procedurally defaulted. (*Id.*). Respondents filed a response, indicating their non-opposition to petitioner's motion for leave to supplement his opposition, but indicating their opposition to petitioner' s motion for reconsideration regarding Ground 8. (ECF No. 52). Petitioner filed a reply. (ECF No. 58).

On September 10, 2014, this Court issued an order denying respondents' motion to dismiss Ground 7 of the second amended petition and granting petitioner's motion for reconsideration of the dismissal of Ground 8 of the second amended petition. (ECF No. 60). As to Grounds 7 and 8, the Court ruled that the analysis of cause and prejudice arguments and fundamental miscarriage of justice issues are closely related to the analysis on the merits of the claims. The Court's order directed respondents to file an answer addressing Grounds 1, 7, and 8 of the second amended petition and directed petitioner to file a reply to the answer. (*Id.*). On December 4, 2014, respondents filed an answer. (ECF No. 67). On April 6, 2015, petitioner filed a reply to the answer. (ECF No. 72). Petitioner filed a corrected image of the reply on April 9, 2015. (ECF No. 73). The Court now analyzes the merits of Grounds 1, 7, and 8 of the second amended petition.

### III. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

///

///

## IV. Merits Analysis of Remaining Grounds of Second Amended Petition

### A. Ground 1

Petitioner asserts that his appeal waiver was not knowing, voluntary, and intelligent because he misunderstood the waiver's scope and finality. Petitioner further asserts that the trial court's canvass regarding the appeal waiver was insufficient because the court failed to confirm that he had been informed of and understood his potential appeal grounds and because it failed to inquire into his mental and physical condition at the time of the waiver. (ECF No. 38, at pp. 18-20).

Under federal law, to be valid, a guilty plea must be knowing, voluntary, and intelligent. *U.S. v. Brady*, 397 U.S. 742, 748 (1970). A guilty plea must represent a voluntary and intelligent choice among alternative courses of action open to a defendant. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985). The court looks to what a defendant reasonably understood at the time of the plea. *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986). The record must demonstrate that the defendant understands that he is waiving his privilege against self-incrimination, his right to a jury trial, and his right to confront accusers. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) (defendant's statements, made in open court at time of his plea, are entitled to great weight).

In this case, after the jury found petitioner guilty of first degree murder with the use of a deadly weapon, petitioner and the State entered into a written stipulation to two consecutive sentences of life with the possibility of parole, with parole eligibility after 20 years had been served. (Exhibit 43). Pursuant to the written stipulation, petitioner waived his right to appeal. (*Id.*). At a hearing on May 13, 1996, the state district court canvassed petitioner regarding the stipulation, and specifically, his appeal waiver. (Exhibit 42).

The Nevada Supreme Court concluded that petitioner's appeal lacked merit for the reasons stated in the district court's order denying the first post-conviction petition and motion to withdraw the stipulation. (Exhibit 91). The state district court found that petitioner knowingly and intelligently entered into the stipulation and appeal waiver. In response to petitioner's claim that he was taking mind-altering drugs which rendered him incapable of knowingly and intelligently

1  entering into the stipulation, the court noted that a court-ordered psychological examination
2  indicated that he was taking thorazine and sinequan, and that those medications enhanced his mental
3  capacity. The report indicated that petitioner was of sufficient mentality to understand and know the
4  charges against him, was able to distinguish right from wrong, and was able to assist in trial
5  preparation. The court cited *Godinez v. Moran*, 509 U.S. 389 (1993), for the rule that there is no
6  higher standard of competency required to plead guilty than to stand trial. (Exhibit 74).

7  In its order of March 29, 2005, the Nevada Supreme Court affirmed the denial of petitioner's
8  second post-conviction habeas petition. (Exhibit 114). In the context of petitioner's asserted cause
9  and prejudice to overcome procedural bars, the Nevada Supreme Court addressed petitioner's
10 allegation that his waiver was involuntary:

> Moreover, we conclude that Jones also failed to demonstrate prejudice to overcome applicable procedural bars. First, Jones argues that his waiver of his right to appeal was involuntary because: he did not understand the scope of the waiver, his counsel misadvised him concerning the merits of an appeal, and the district court inadequately canvassed him regarding the waiver. However, Jones acknowledged that he had discussed the waiver with counsel, that he understood the consequences of the waiver, and that he was foregoing his right to appeal to secure a life sentence with the possibility of parole. Considering the entire waiver canvass, we conclude that the district court correctly found the waiver to be valid and that Jones fails to demonstrate prejudice with this claim.

18 (Exhibit 114, at pp. 2-3).

19 The state district court's canvass regarding the stipulation included the following discussion:

20 Court:      Now, do you understand what it means to give up your right to an appeal?
21 Defendant:  Yes, I do.
22 Court:      What does it mean?
23 Defendant:  It means that at a later date if I have any feelings that the court proceedings or my
24             attorneys or the evidence wasn't presented in my favor that I could appeal it and go
25             back to court.
26 Court:      Well, basically what you would be doing by filing a notice of appeal is you say there
27             were some errors of law that we made in this particular case . . . I don't recall
28             necessarily what motions Mr. Hillman made, but, you know, obviously he made

|   |   |   |
|---|---|---|
| | | some objections to certain evidence.  Maybe I was wrong on those types of rulings that I made, but that's what you would be looking for in an appeal to the Nevada Supreme Court, errors of law that I made in conducting the trial . . . .  Are you willing to forego that to say that in order or exchange to make sure that the State offers and that I impose a sentence of life with the possibility of parole, you are waiving your right to have an appeal in this case? |
| Defendant: | That's right. |

(Exhibit 42, at pp. 5-6).  Petitioner argues that his statement that "I could appeal it and go back to court" indicates that he did not understand that he was waiving his appeal rights.  In the view of this Court, petitioner's response seems to be an attempt to convey his understanding of the concept of an appeal, rather than an explanation of what the waiver meant.  It seems more likely that petitioner misunderstood the court's question than that he misunderstood the meaning of the terms of the stipulation.  In an earlier exchange during the canvass, petitioner stated that he had read the stipulation, discussed it with his attorneys, and that he understood its meaning:

| | |
|---|---|
| Court: | Have you had a chance to read the stipulation and order to waive the penalty hearing and to waive the appeal? |
| Defendant: | Yes, I have. |
| Court: | All right, have you had a chance to discuss this agreement with your attorneys? |
| Defendant: | Yes, I have. |
| Court: | What's you understanding of what is going on by you signing this agreement?  And I'm looking at a signature here Christopher A. Jones.  I saw you sign it.  What's your understanding of what is happening here? |
| Defendant: | We are going to forego the penalty hearing, and I'm going to waive my right to appeal in exchange for life with the possibility of parole. |

(Exhibit 42, at pp. 3-4).  Petitioner's counsel later added that he had discussed potential appeal grounds with petitioner and determined that the grounds for appeal were few and weak.  (*Id.*, at pp. 6-7).

///

1    Petitioner argues that he was taking psychiatric medication that rendered his ability to enter a knowing, voluntary, and intelligent waiver questionable.  Petitioner argues that respondents' contention that the medications enhanced his mental capabilities is faulty.  Petitioner points to the same psychological report cited by the state district court in its order denying the first state habeas petition. (Exhibit 95).  The finding that petitioner was depressed and that the report questions his judgment and reasoning faculties does not prove that petitioner lacked the ability to enter a knowing, voluntary, and intelligent waiver.  The report offers several observations regarding petitioner's mental state, but ultimately concludes that he was able to understand and know the charges against him, was able to distinguish right from wrong, and was able to assist his attorney in trial preparation. (Exhibit 95).  While petitioner argues that a finding of competency is not determinative of whether a plea was knowing, voluntary and intelligent, it is one indication of petitioner's ability to understand the proceedings in which he agreed to the stipulation and waived his appeal rights.  Petitioner has not presented evidence that petitioner's mental state, or any other factor, invalidated petitioner's waiver of his appeal rights.  In light of the written appeal waiver (stipulation), the entire appeal waiver canvass, and all documents within the state court record, this Court finds that petitioner's appeal waiver was knowing, voluntary, and intelligent.

    In sum, the state district court and the Nevada Supreme Court have made factual findings that petitioner's appeal waiver was knowing, voluntary, and intelligent.  (Exhibits 74, 91, 114).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Conclusory allegations will not overcome the presumption that the state court's findings are correct.  *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2000).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court denies habeas relief as to Ground 1 of the second amended petition.

///

///

### B. Ground 7

In Ground 7 of the second amended petition, petitioner alleges ineffective assistance of counsel because his trial counsel failed to object to other bad act evidence stemming from a previous altercation between petitioner and the victim, Almeta Lynnette Porter Williams, several months before petitioner killed her. (ECF No. 38, at pp. 29-30).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

As to the substantive claim regarding the admission of bad act evidence, federal habeas relief is generally not available to review questions about the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The Ninth Circuit has held that, on habeas review, federal courts may not interfere with a state evidentiary ruling, but may only consider whether the evidence was so prejudicial that its admission violated fundamental due process and the right to a fair trial. *Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (1993). Federal courts "are not a state supreme court of errors; [they] do not review questions of state evidence law. On federal habeas [the courts] may only consider whether the petitioner's conviction violated constitutional norms." *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (citing *Engle v. Issac*, 456 U.S. 107, 119 (1982)).

"Failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief. While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness." *Jammal*, 926 F.2d at 919.

> Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions. [Footnote omitted]. Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must be of such quality as necessarily prevents a fair trial.

*Jammal*, 926 F.2d at 920 (internal quotations omitted).

In the instant case, the trial court introduced evidence relating to a hunting trip in Ely, Nevada, where the victim incurred injuries during an argument with petitioner several months before the killing. At trial, petitioner had testified on direct examination as to a positive relationship between himself and the victim, testifying that he and the victim were engaged and that they were planning to buy a home together. (Exhibit 36, at pp. 77). During cross-examination, the prosecutor questioned the victim about statements he had made to police indicating that the victim had broken up with him. The prosecution asked petitioner if he had an "on-again off-again" relationship with the victim and whether he became violent with her at those times when she had broken off the

relationship. (Exhibit 36, at p. 104). Petitioner denied that he had been violent with her. (*Id.*). The prosecution then asked petitioner whether he had injured the victim on a previous occasion during their hunting trip to Ely. (Exhibit 36, at pp. 107-109). On re-direct, defense counsel had petitioner explain what happened during the Ely trip. (Exhibit 36, at p. 126). It appears that the prosecution elicited testimony regarding prior acts during the Ely trip after petitioner had opened the door on direct examination by testifying that he had a normal and happy relationship with the victim, free of violence. It appears that the prosecution brought in this evidence to prove motive, intent, plan, modus operandi, or absence of mistake or accident pursuant to NRS 48.045.

While petitioner argues that the prior bad act evidence should not have been admitted under NRS 48.045 because the prosecution had not met the requirements for invoking that rule, "it is certainly possible to have a fair trial even when state standards are violated." *Jammal*, 926 F.2d at 919. "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must be of such quality as necessarily prevents a fair trial." *Id.* at 920. This Court finds that the admission of the prior bad act evidence regarding events during the Ely trip was not so prejudicial that its admission violated due process or petitioner's right to a fair trial. Because the prior bad act evidence did not violate petitioner's constitutional rights, petitioner has not shown that his counsel's failure to object to the admission of the evidence was unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *See Strickland v. Washington*, 446 U.S. at 684.

Furthermore, even if the prior bad act evidence should not have been admitted, the error is subject to this Court's application of the *Brecht* harmless error rule. Petitioner is not entitled to federal habeas relief unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict" under the independent harmless error standard of *Brecht v. Abramson*, 507 U.S. 619, 623 (1993). The admission of the prior bad act evidence did not have a substantial and injurious effect or influence in determining the jury's verdict, particularly considering the overwhelming evidence of petitioner's guilt presented at trial. As such, the error was harmless. *Id.* This Court denies federal habeas relief on Ground 7 of the second amended petition.

### C. Ground 8

Petitioner alleges that his trial counsel was ineffective for failing to object to the prosecution's closing argument, which petitioner asserts was replete with improper commentary including personal opinions and disparagement of the defense. (ECF No. 38, at pp. 30-32).

In reviewing prosecutorial misconduct claims, the narrow issue that the federal habeas court may consider is whether there was a violation of due process, and not whether there was misconduct under the court's broad exercise of supervisorial power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The test is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Court must distinguish ordinary trial error of a prosecutor from that sort of egregious misconduct which amounts to a constitutional violation of due process. *Smith v. Phillips*, 455 U.S. 209, 221 (1982). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 219. Moreover, determining whether prosecutorial misconduct occurred during closing argument requires an examination of the entire proceedings so that the prosecutor's remarks may be placed in the proper context. *Boyde v. California*, 494 U.S. 370, 384-85 (1990). If a cautionary instruction was given by the trial court, the jury is presumed to have followed it. *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

The Ninth Circuit Court of Appeals has set forth the standard for prosecutorial misconduct as follows:

> "Improper argument does not, per se, violate a defendant's constitutional rights." *Fields v. Woodford*, 309 F.3d 1571, 1576 (9th Cir. 2002) (quoting *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (internal quotation marks omitted). Rather, "[t]he relevant inquiry is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 643). In *Darden*, during closing, the prosecutor referred to Darden as an "animal," and said that he should not be allowed out of a cell unless he was on a leash and that he wished that he could see Darden "sitting here with no face, blown away by a shotgun." *Id.* at 181-83, nn. 11 & 12. Nevertheless, the Court found that these improper statements did not deprive Darden of a fair trial, in part because of the substantial

> evidence against Darden, and because the trial court instructed the jury that the arguments made by counsel were not evidence. *See id.* at 181-83; *see also Donnelly*, 416 U.S. at 645 (finding that an improper statement by a prosecutor during closing argument did not amount to a due process violation in part because the judge instructed the jury that the remark was not evidence); *Allen v. Woodford*, 395 F.3d 979, 998 (9th Cir. 2005) (finding that prosecutorial misconduct did not amount to a due process violation where the trial court gave an instruction that the attorneys' statements were not evidence and where the prosecutors presented substantial evidence of the defendant's guilt).

*Runningeagle v. Ryan*, 686 F.3d 758, 781 (9th Cir. 2012) *cert. denied* 133 S.Ct. 2766 (2013).

In the present case, petitioner argues that the following statements made by the prosecutor during closing arguments constituted prosecutorial misconduct, and that his trial counsel's failure to object to the statements constituted ineffective assistance of counsel:

> 1. [Y]ou promised Mr. Koot and me that you would deliver this verdict if we provided you with the evidence. I assure you the evidence is there. There is no reasonable doubt as to the offense of murder in the first degree. (Exhibit 38, at pp. 40-41).
>
> 2. Are we all idiots? We just leave our common sense outside on the street – on Third Street – on Carson Street – and we come in here and we get inundated by law and nonsensical BS from lawyers . . . (Exhibit 38, at p. 57).
>
> 3. That's still our case. We're still there. No amount of legal instructions. No amount of psychiatric excuse giving is going to change that. (Exhibit 38, at p. 57).
>
> 4. Dr. O'Gorman – God bless him – he's been around a long time – no question he's a psychiatrist – he's hired to give an opinion. That's what he has done. He's hired to give an opinion. . . . I mean, I was standing here – come on, Dr. O'Gorman, I know you're here. You're hired by the defense to give an opinion, but don't insult all of us. (Exhibit 38, at p. 59).
>
> 5. I don't care how blasted you are out of your mind – quite frankly I doubt if he was that bad off. (Exhibit 38, at p. 62).
>
> 6. You know, when I saw the psychiatrist – and we said the defendant saw a psychiatrist – you wonder who really needs a psychiatrist in a case such as this, certainly not the defendant. I mean, he got a psychiatrist to state an opinion. (Exhibit 38, at p. 63).
>
> 7. You consider second degree murder only if I haven't done my job and presented sufficient evidence to prove that he intended to kill. (Exhibit 38, at p. 64).

-16-

>  8. Now there are so many excuses for everything that people intentionally do. You bring professionals in to give those excuses.
> (Exhibit 38, at p. 66).

Petitioner contends that his trial attorney lodged objections to only the statements made at numbered items 2 and 3. (Exhibit 38, at pp. 57-58). The trial transcript indicates that petitioner's trial attorney also objected to the statement made at numbered item 5. (Exhibit 38, at p. 62).

Petitioner argues that the statements made by the prosecutor during closing statements were "absolute misconduct" because the prosecutor told the jury that the opinion of the expert witness was bought and paid for; the prosecutor implied that it was defense counsel who needed a psychiatrist; the prosecutor referred to the expert testimony as "excuses;" and the prosecutor called the defense case "nonsensical BS" while implying that the jury would be "idiots" to believe the defense's case over their own "common sense." (ECF No. 73, at p. 18). The prosecutorial comments about which petitioner complains must be viewed in context of the entire trial. *See Boyde v. California*, 494 U.S. 370, 384-85 (1990). As in *Darden*, the trial court in the instant case instructed the jury that "statements, arguments and opinions of counsel are not evidence in this case." (Exhibit 39, at Jury Instruction No. 32, line 11). Significantly, in this case, the State presented overwhelming evidence of petitioner's guilt during trial, a fact found by the Nevada Supreme Court in the context of determining that petitioner failed to overcome state procedural bars in the March 29, 2005 order, as follows:

> Jones contends, second, that comments made by the prosecutor during closing arguments constituted prosecutorial misconduct, and third, that his counsel was ineffective for failing to object to most of these comments. Even assuming that the challenged comments were improper, such prosecutorial misconduct may constitute harmless error when there is overwhelming evidence of guilt. Here, the record reveals overwhelming evidence of Jones's guilt. Consequently, we conclude that Jones fails to establish that he was prejudiced.

(Exhibit 114, at p. 3). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Conclusory allegations will not overcome the presumption that the state court's findings are correct. *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2000). The prosecutor's statements made during closing argument did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Because the prosecutor's statements did not rise to the

-17-

level of prosecutorial misconduct, petitioner cannot show that his counsel's failure to object to each statement was unreasonably deficient and that the defense was actually prejudiced as a result of counsel's alleged errors. *See Strickland v. Washington*, 446 U.S. at 684. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Federal habeas relief is denied as to Ground 8.

**V. Certificate of Appealability**

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this Court's denial of the remaining grounds of the second amended petition debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

**VI. Conclusion**

**IT IS THEREFORE ORDERED** that the remaining grounds of the second amended petition for a writ of habeas corpus are **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT ACCORDINGLY.**

DATED this 8th day of September, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE